UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | CAUSE NO. 1:25-cr-00152-SEB-MJD |
| | ) | |
| TERESA PALMER, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by counsel, Thomas E. Wheeler, II, United States Attorney for the Southern District of Indiana, and Adam Eakman, Assistant United States Attorney ("the Government"), hereby submits the following sentencing memorandum in support of a sentence of 41 months, which is a sentence on the high end of the sentencing guidelines.

### I.    Introduction

Teresa Palmer was a trusted manager at a credit union. Using this position, she stole from the credit union's clients by forging signatures in order to get money out of their accounts and into her hands. In doing so, she intentionally targeted the elderly and incapacitated—vulnerable members of society who were unable to defend themselves. Through this deception, she was able to steal more than $380,000 of clients' funds. She used this money on herself, spending the bulk of the money gambling. This is simply greed. She should be sentenced on the high-end of the sentencing guidelines. A sentence of 41 months is necessary to reflect the seriousness of the offense, provide just punishment, and to afford adequate deterrence.

1

## II.    Offense Conduct

Teresa Palmer was a 20-year employee at a credit union. During that time, she worked her way up from teller to branch manager. By 2022, she had been a branch manager for 8 years and had earned the trust of her colleagues and clients. As branch manager, she was responsible for managing the employees and the day-to-day operations of the branch. She also met with customers in her office to help with their banking needs. For example, she could help customers get cashiers' checks, withdraw money, or deposit money. Sometimes she would ask bank tellers to do this work for her, saying it was on behalf of customers.

In 2022, the credit union fired Palmer after learning that she forged customer signatures on some banking paperwork. After Palmer was fired, a client reported to the credit union that there were unauthorized transactions in her father's account. The credit union investigated those claims and determined that Palmer had not only forged signatures—she also took money from the client's account without authorization. After an internal investigation, the credit union learned that this client was not the only one. Palmer had stolen from four clients' accounts over a two-year period.

Palmer stole from these customer accounts using a couple of methods. First, she made unapproved cash withdrawals. To do this, Palmer would withdraw money from a customer's bank account directly. She simply took cash directly from her drawer and claimed the money was being requested by a customer. Second, Palmer used fraudulent cashier's checks. Palmer would print cashier's check, collect it off the printer, and then stamp "for deposit only" on the check or forge a customer's signature. She would then bring it to a teller to be cashed, claiming that a customer had approved the transaction. Through both methods, Palmer was able to get cash out of client accounts.

Palmer was able to get away with her theft for so long because she targeted accounts that she believed were not closely watched by the account holder due to age or incapacity. Victim 1 was an elderly man with dementia. He held a bank account at the credit union until he died in February 2024. Upon his death, control of the account passed to his power of attorney. At the time of the thefts, Victim 1's bank account was dormant. It wasn't being used to receive money, and his power of attorney wasn't paying any bills out of the account. Similarly, Victim 2 was an elderly man who is incapable of managing his own finances. His power of attorney managed his finances. The power of attorney would present Palmer with a document detailing the transactions for the month and the amount of money she needed for additional expenses. Palmer would conduct the appropriate business with the bank but also conducted unauthorized transactions kept hidden from the client. Palmer stole around $350,000 from these two accounts alone.

In total, Palmer stole around $380,000 through this scheme. With that money, Palmer primarily gambled. Palmer had a "Chumba" card that she used for gambling. This was a prepaid debit card used for gambling at Chumba's website. Chumba is an online gambling website that allows users to pay for their gambling by funding an account that is maintained on the site. Palmer put money into her account from various banks accounts or made cash deposits onto the card at Wal-Mart. During this period, more than $420,000 was deposited into her Chumba account.

III.    **Section 3553(a) Factors**

A sentence of 41 months is necessary to address the seriousness of the offense, provide just punishment, and promote deterrence.

**A. A 41-month sentence would reflect the seriousness of the offense and provide just punishment.**

Palmer's crime was serious. She stole money from those who needed it and she gamble it away. She didn't do this once or twice. She did it dozens of times. In doing so, she created chaos in the lives of her victims who had no idea where the money in their account was going or why. She also caused the credit union she worked for to spend substantial time and resources investigating the theft and rebuilding the trust of its clients.

Palmer's offense is especially serious because of who she targeted: elderly citizens who were unable to manage their own finances. Palmer gets a two-level enhancement because she "knew or should have known that a victim of the offense was a vulnerable victim." This applies if just one of a defendant's victims qualifies as a vulnerable victim. Here, two of her victims were vulnerable, as Palmer well knew.

Courts have consistently been affirmed when issuing lengthy sentences for defendants who prey on the elderly. For example, in *United States v. Lewis*, 842 F.3d 467, 470 (7th Cir. 2016), the defendant embezzled more than $2 million from twelve people who were 75 to 92 years old. The defendant pleaded guilty to one count of wire fraud in violation of 18 U.S.C. § 1343. Her guidelines range was 97-121 months. The district court sentenced the defendant to 180 months. On appeal, the Seventh Circuit affirmed the sentence. The court stated, "[w]e agree with the district court that [the defendant's] crime was especially damaging to her victims and that the sheer magnitude of her offense coupled with the other § 3553 factors discussed by the district court justified an above-guidelines sentence." *Id.* at 478. The court also affirmed the district

4

court's application of the vulnerable-victim enhancement. *See also United States v. Scrivener*, 189 F.3d 944, 950 (9th Cir. 1999) (affirming an above-guidelines sentence for a defendant who perpetrated a telemarketing scam against elderly victims).

Palmer also abused her position of trust, introducing a unique interplay between the abuse of trust and vulnerable victim enhancements. Ultimately, the reason she was able to steal from multiple vulnerable victims was that she was entrusted with access to their accounts. This makes her conduct especially egregious. A sentence on the high-end of the sentencing guidelines would adequately reflect the seriousness of the offense and to provide just punishment for the offense under 18 U.S.C. § 3553(a).

### B. A sentence on the high-end of the guidelines would promote deterrence.

Unfortunately, Palmer is not the only person trying to prey on the wealth of the elderly. Elder fraud complaints to the FBI's Internet Crime Complaint Center (or IC3) increased by 14% in 2023, and associated losses increased by about 11%, according to IC3's 2023 Elder Fraud Report.[1] 2024 was even worse for the elderly. In 2024 there was a total of $4.885 billion in losses from 147,127 complaints. This is a 46% increase in complaints from 2023, as well as a 43% increase in losses.[2] This probably dramatically understates the problem. Many of these crimes likely go unreported, and "only about half" of the fraud scam complaints submitted to IC3 in 2023 included victims' ages. *Id.*

In short, many people see elder fraud as a viable way to make money. Palmer was clearly one of them. This sort of thinking must be deterred. A high-end sentence would do exactly that.

---

[1] "Elder Fraud, in Focus," *FBI* (available at: https://www.fbi.gov/news/stories/elder-fraud-in-focus).
[2] "FBI Highlights Growing Number of Reported Elder Fraud Cases Ahead of World Elder Abuse Awareness Day," *FBI*, (available at: https://www.fbi.gov/contact-us/field-offices/boston/news/fbi-highlights-growing-number-of-reported-elder-fraud-cases-ahead-of-world-elder-abuse-awareness-day).

**CONCLUSION**

The United States respectfully submits that Teresa Palmer should receive a sentence of 41 months' imprisonment and be ordered to pay restitution in the amount of $381,400.05 for her crimes.

Respectfully submitted,

THOMAS E. WHEELER II
United States Attorney


By:     /s/  Adam Eakman
        Adam Eakman
        Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, a copy of the foregoing Sentencing Memorandum was filed electronically. Notice and service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the Court's system.

By:    *s/ Adam Eakman*
       Adam Eakman
       Assistant United States Attorney
       United States Attorney's Office
       10 West Market Street, Suite 2100
       Indianapolis, IN 46204-3048
       Telephone: 317-226-6333
       Email:  adam.eakman@usdoj.gov