**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:25-cr-00152-SEB-MJD |
| | ) | |
| TERESA PALMER, | ) | |
| | ) | |
| Defendant. | ) | |

<u>DEFENSE SENTENCING MEMORANDUM</u>

Comes now Defendant Teresa Palmer, by Counsel, Dominic D. Martin, and the

Indiana Federal Community Defenders, and files the following Sentencing Memorandum

regarding the court's sentencing considerations in this matter and would show:

**I. The Advisory Guideline marks the start of the analysis, not its conclusion.**

The advisory Guideline range appropriately reflects the seriousness of Teresa

Palmer's offense. She abused a position of trust, caused substantial financial loss, and

harmed vulnerable victims. Nothing in this memorandum minimizes that harm or the

seriousness of her conduct.

The Guidelines, however, answer only part of the question before the Court.

Congress requires a sentence that is "sufficient, but not greater than necessary" after

consideration of both the offense and the defendant's history and characteristics. 18 U.S.C.

§ 3553(a). The Guidelines begin that analysis; they do not replace the Court's obligation

to impose an individualized sentence.

For nearly three decades, Teresa Palmer lived a life wholly inconsistent with this

offense. She built a lengthy career, maintained stable employment, and reached her mid-

fifties without a criminal conviction. During the offense period, she also experienced documented medical problems requiring neurological and specialized treatment. Those conditions do not excuse her conduct, but they are part of the history and characteristics Congress requires the Court to consider.

The Sentencing Commission's recent work concerning true first offenders reinforces that inquiry. Although § 4C1.1 excludes Ms. Palmer because of the nature of her offense, the research underlying the amendment remains relevant under § 3553(a), particularly to recidivism, public protection, and the need for a lengthy prison term.

**II. The Advisory Guideline Range Already Accounts for the Seriousness of Ms. Palmer's Offense**

There is no dispute that Teresa Palmer committed a serious offense. For years, she occupied a position of substantial trust at Centra Credit Union. She violated that trust, causing serious financial loss to individuals who depended upon her honesty and integrity. Many of those victims were particularly vulnerable because of age or diminished capacity. Their victim impact statements make clear that the financial losses were accompanied by feelings of betrayal, anxiety, and the loss of confidence that comes from discovering that a trusted financial advisor exploited that relationship.

The Guideline calculation appropriately reflects those aggravating circumstances. The offense level incorporates the financial loss, abuse of trust, and victims' vulnerability. The defense neither challenges those enhancements nor asks the Court to discount the resulting harm.

Financial crimes often injure victims beyond dollars and cents. This offense

damaged relationships built over years and harmed people least able to protect themselves. Those consequences warrant serious consideration and a meaningful sentence.

They do not, however, end the inquiry. Section 3553(a) also requires consideration of Ms. Palmer's history and characteristics and the sentence needed to fulfill the purposes of sentencing. The Guidelines measure the gravity of her conduct. The remaining question is whether the resulting range fully reflects the person who committed it and the punishment necessary to achieve those purposes.

### III. Why Ms. Palmer's Lack of Criminal History Matters

Section 3553(a) requires the Court to consider both the offense and "the history and characteristics of the defendant." That directive recognizes that people who commit equally serious crimes may present different risks of recidivism and different needs for punishment.

The Sentencing Commission recently studied recidivism among federal offenders and found that defendants with zero criminal history points recidivate at substantially lower rates than other defendants in Criminal History Category I, including those with a single point. The Commission found the distinction significant enough to support an adjustment for many zero-point offenders.

The Commission excluded offenses with specified aggravating characteristics, including vulnerable victims, based on "the seriousness of the instant offense of conviction or the existence of aggravating factors in the instant offense."[1]

---

[1] Information regarding the history of Amendment 821 and the discussion of "Zero-Point Offenders" can be found at https://www.ussc.gov/guidelines/amendment/821.

Those conclusions are complementary. The research addresses what criminal history suggests about recidivism; the exclusions address the seriousness of the present offense. The former speaks to the offender, the latter to the offense.

Ms. Palmer is ineligible for § 4C1.1 because her offense involved vulnerable victims, and the defense does not contend otherwise. But that exclusion does not erase the Commission's findings about zero-point offenders. Those findings remain relevant to public protection, deterrence, and the likelihood of future criminal conduct under § 3553(a).

**IV. Ms. Palmer's History and Characteristics Reflect the Profile Identified by the Commission**

The Commission's empirical research identifies a category of offenders who, despite the seriousness of their offenses, are markedly less likely to engage in future criminal conduct than other defendants assigned to Criminal History Category I. Ms. Palmer's life history reflects the characteristics the Commission identified.

Before this offense, Ms. Palmer reached her mid-fifties without any criminal history points. For nearly three decades, she remained continuously employed by the same financial institution, advancing from an entry-level position to Branch Manager through years of steady work and increasing responsibility. She built long-term relationships throughout her community, maintained stable employment throughout her adult life, and earned the confidence of both her employer and the customers she served. Nothing in her history suggested a pattern of criminal behavior or a persistent disregard for the law.

Indeed, it is precisely because Ms. Palmer spent decades earning the trust of others

that her criminal conduct is so difficult to reconcile with her prior life. The offense before the Court does not mark the culmination of a long course of criminal conduct. Rather, it stands in sharp contrast to nearly every measurable aspect of her personal history.

That distinction does not diminish the seriousness of the offense. It does, however, bear directly on the questions Congress has instructed sentencing courts to answer. A defendant who reaches middle age after decades of lawful conduct, stable employment, and productive community participation presents materially different sentencing considerations than a defendant whose criminal conduct shows a continuing pattern of unlawful behavior.

Those characteristics also bear directly on the need to protect the public. Ms. Palmer has permanently lost the career in which these offenses were committed. She no longer holds a position of financial trust. She has forfeited the professional reputation she spent decades building and faces substantial restitution obligations that will continue long after her sentence is served. The opportunities, incentives, and circumstances that made these offenses possible no longer exist.

These facts do not excuse Ms. Palmer's conduct. However, they provide compelling evidence that the risk of future criminal conduct is extraordinarily low. That conclusion is consistent not only with common experience but also with the empirical findings on which the Sentencing Commission based its recent amendments for offenders with zero criminal history points.

**V. This Offense Does Not Define Ms. Palmer's Life**

The conduct in this case was serious. It involved sustained abuse of trust, harm to

vulnerable account holders, and a substantial financial loss. Ms. Palmer has pleaded guilty and does not ask the Court to minimize any of those facts. But § 3553(a) requires the Court to consider more than the period during which the offense occurred. It requires consideration of the defendant's entire history and characteristics. Viewed in that wider context, this offense signifies a profound departure from the life Ms. Palmer had previously lived, not the maintenance of an established pattern of criminal conduct.

Ms. Palmer spent nearly three decades working for Centra Credit Union. She remained with the same institution for most of her adult life. Eventually, she became a branch manager, a position that could not have been obtained or retained without years of dependable work and the confidence of her employer and the members she served. Until this case, she had never accumulated a criminal history point. Her record wasn't just free of felony convictions; it was free of any history suggesting that criminal conduct had become part of her way of life.

That history matters because the offense did not stem from an established course of fraud, theft, or financial misconduct. For decades, Ms. Palmer worked, raised a family, and was a productive member of her community. The conduct before the Court occurred during a far narrower period of her life and in the context of gambling that had plainly become destructive and financially unmanageable. The investigation documented hundreds of thousands of dollars flowing to online gambling platforms over approximately two years. During her FBI interview, Ms. Palmer readily acknowledged that she was the principal gambler and that she continued to gamble even after losing her position at Centra. Her reaction to the amount of money involved reflected how completely the gambling had distorted her understanding of the financial situation.

That circumstance does not excuse her decisions. Nor does it diminish the harm suffered by the victims or by Centra. It does, however, help explain how conduct so inconsistent with the rest of her life developed and escalated. This was not a situation in which Ms. Palmer methodically built a criminal enterprise for personal advancement or accumulated wealth that remained available for her benefit. The money was consumed by gambling. What began as compulsive behavior appears to have overtaken her judgment and ultimately destroyed the career, reputation, and financial security she had spent decades building.

The FBI interview also offers a revealing, if imperfect, portrait of Ms. Palmer before she had counsel and before a sentencing presentation was developed on her behalf. She did not deny that she had gambled extensively. She acknowledged moving cash onto prepaid cards and using those funds for online gambling. She did not blame coworkers, accuse Centra of fabricating the allegations, or portray herself as the victim of a conspiracy. Instead, she repeatedly expressed confusion and disbelief about the scale of the transactions and raised concerns that her history of multiple strokes had affected her ability to remember events accurately. Her statements during that interview cannot erase the conduct to which she later pleaded guilty. They do, however, reinforce that the offense occurred amid compulsive gambling, deteriorating judgment, and significant health concerns rather than as part of a lifelong pattern of calculated dishonesty.

Near the conclusion of that interview, after being confronted for more than an hour with the government's evidence, Ms. Palmer returned to the one fact that had established her adult identity: she had worked at Centra for a long time and had helped many people. That observation was not a legal defense. It expressed the distance between the person she

understood herself to be and the conduct the agents described. The offense caused that identity to collapse. She lost the career through which the conduct occurred, the position of trust that made it possible, and the reputation she had devoted decades to earning.

Those consequences also affect the likelihood of future criminal conduct. Ms. Palmer will not again hold a comparable position at a financial institution. She no longer has access to customer accounts or fiduciary authority. She faces substantial restitution, a felony conviction, public disgrace, and the permanent loss of a profession that had structured nearly her entire adult life. The circumstances that permitted the offense no longer exist, and the consequences she has already experienced make repetition extraordinarily unlikely.

None of this asks the Court to overlook what Ms. Palmer did. It asks the Court to place the offense within the full life Congress has directed it to consider. The approximately two years of this conduct were devastating—to the victims, to Centra, and to Ms. Palmer's own family and future. But those years do not erase the decades that preceded them, nor do they establish that Ms. Palmer poses an ongoing danger to the public. Her history instead reflects an offender whose crime was grave, but whose likelihood of returning to criminal conduct is exceptionally low.

**VI. A Sentence Below the Advisory Guideline Range Is Sufficient, But Not Greater Than Necessary, to Achieve the Purposes of Sentencing**

Section 3553(a) requires the Court to impose a sentence that is sufficient but not greater than necessary to achieve the purposes of federal sentencing. That directive

The Court recognizes that advisory guideline ranges, while important, do not answer every

sentencing question. The Court must determine whether the sentence produced by the Guidelines remains necessary after considering the particular defendant before it.

This Court has already accounted for the seriousness of Ms. Palmer's offense through the advisory guideline calculation. The Guideline reflects the substantial financial loss, the abuse of a position of trust, and the victims' vulnerability. Nothing in this memorandum asks the Court to discount those considerations. Those factors appropriately establish the seriousness of the offense.

The remaining question is whether a sentence at the top of that advisory range is necessary to achieve the statutory purposes of sentencing. On this record, it is not.

A substantial prison term will constitute just punishment, but punishment did not begin at sentencing. Ms. Palmer has already lost nearly everything that defined her adult life: a career spanning almost thirty years, her professional reputation, her community's trust, and any realistic opportunity to assume financial responsibility again. She also faces lifelong restitution and the stigma of a federal felony. These consequences do not replace imprisonment, but they bear on how much imprisonment is sufficient.

Nor is a Guideline sentence necessary for specific deterrence. Unlike an offender undeterred by prior convictions or leniency, Ms. Palmer has no criminal history and has seen the professional life she spent decades building collapse. Her conviction, imprisonment, restitution, lost career, and permanent exclusion from banking make future criminal conduct extraordinarily unlikely. General deterrence remains important in financial cases, but it does not require a sentence greater than necessary for this defendant.

For similar reasons, the need to protect the public is substantially reduced. The

offense was made possible because Ms. Palmer held a position of extraordinary trust within a financial institution. That position no longer exists and will never exist again. She no longer has access to customer accounts, supervisory authority within a bank, or the professional standing that enabled the offense. The very circumstances that facilitated the offense have been permanently eliminated. The public therefore requires considerably less incapacitation than would be appropriate in a case involving an offender who retains the same opportunities or presents a continuing pattern of criminal conduct.

The Court may also consider Ms. Palmer's need for treatment and medical care.[2] The record reflects a history of significant medical issues, including multiple strokes, together with a gambling disorder that plainly played a central role in the offense conduct. Although incarceration will necessarily include access to certain treatment services, the ultimate objective of sentencing is not simply punishment. It is also to reduce the likelihood that the defendant will again appear before a criminal court. Continued treatment for her gambling disorder and appropriate medical care will better serve that objective than a sentence that exceeds what is necessary to accomplish the other statutory purposes.

**CONCLUSION**

This case involves a serious breach of trust and substantial financial harm. Ms. Palmer does not ask the Court to minimize either. The advisory Guidelines appropriately

---

[2] Counsel for Ms. Palmer has over 4000 pages of medical records indicating that she suffers from many serious medical conditions including right thalamic stroke secondary to uncontrolled hypertension (January 2022); ischemic vertebrobasilar brainstem stroke (November 2022); resistant hypertension; adrenal hyperplasia/primary hyperaldosteronism; chronic kidney disease; later hospitalization for altered mental status following syncope and head trauma in August 2025, with MRI evidence of two cerebral microhemorrhages.

reflect the seriousness of her conduct, including the abuse of a position of trust, the vulnerability of the victims, and the substantial financial loss. Those considerations are entitled to substantial weight, and this Court should give them that weight.

Section 3553(a), however, requires the Court to sentence not only the offense, but the person who committed it.

For nearly three decades, Ms. Palmer lived as a productive, law-abiding member of her community. She built a career, supported her family, and earned the confidence needed to rise to a position of significant responsibility. The conduct before the Court occurred during a comparatively brief period marked by compulsive gambling, deteriorating judgment, and circumstances that ultimately destroyed the very life she had spent decades building. She has now lost her profession, her reputation, her standing in the community, and any realistic possibility of ever again occupying a comparable position of trust. She will remain responsible for substantial restitution long after her term of imprisonment has ended.

Nothing in this record suggests that Ms. Palmer poses a continuing danger to the public or is likely to commit another crime. The Sentencing Commission's own research confirms that offenders with no criminal history have markedly lower recidivism risks than other offenders, and the objective facts of Ms. Palmer's life place her squarely within that low-risk profile. The advisory Guidelines properly account for the seriousness of the offense. They do not fully account for the person now before the Court.

Congress entrusted sentencing courts with the responsibility to distinguish between the crime and the person who committed it. In this case, the crime was undeniably grave. But the record also shows that it was committed by a woman who spent decades living a

11

productive, law-abiding life, has lost nearly everything that previously defined her, and presents an extraordinarily low risk of returning to criminal conduct. A sentence below the advisory guideline range recognizes both of those truths and, in doing so, fulfills the mandate of § 3553(a) to impose a sentence sufficient, but not greater than necessary.

Respectfully submitted,

*Dominic D. Martin*
Dominic D. Martin
Indiana Federal Community
Defenders, Inc., 111 Monument
Circle, Suite 3200
Indianapolis, IN 46204
317-383-3520

## CERTIFICATE OF SERVICE

I certify that on July 24, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*Dominic D. Martin*
Dominic D. Martin